UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JEREMY JAY WARREN,

Defendant.

CASE NO. CR18-5527-RJB-02

DETENTION ORDER

THIS MATTER comes on for hearing concerning the release or detention of the defendant under the Bail Reform Act, 18 U.S.C. § 3142. The defendant was indicted on October 31, 2018 on charges of Murder in the Second Degree, and Possession of a Firearm in Furtherance of a Crime of Violence. Dkt. 25.

The government appears through Assistant United States Attorneys Ye-Ting Woo and Grady Leupold. The defendant appears personally and is represented by counsel, Assistant Federal Public Defender John R. Carpenter. A victim's representative, the sister of the deceased victim, provided a statement that the Government's counsel read aloud during the hearing, pursuant to 18 U.S.C. §§3771(a)(4), (a)(8), (e) (2).

The United States Probation and Pretrial Services Office appears through United States Probation Officer Nick Bassett, and has filed (Dkt. 6, 47) a pretrial report, and supplemental report.

Magistrate Judge J. Richard Creatura previously ordered the defendant detained based on a stipulation, without prejudice. (Dkt. 13).

IT IS ORDERED that the defendant:

Shall be detained, under the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community, and considering all the factors in the Bail Reform Act. 18 U.S.C. § 3142(e), (g).

The Court reviewed the documents in the electronic docket for this matter, including the allegations in the Complaint and the Indictment, and considered the arguments and information presented during the hearing. The defendant is charged (in Count Two of the Indictment, Dkt. 25 at p. 2) with Possession of a Firearm in Furtherance of a Crime of Violence, 18 U.S.C. § 924(c). This charge triggers the rebuttable presumption of detention, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. §§ 3142(e)(3)(B). The presumption operates to shift the burden of production to the defendant. *United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). The prosecution has the burden of persuasion. *Id.*

If the defendant proffers evidence to rebut the statutory presumption, this does not mean the presumption has been erased; it simply means the presumption is an evidentiary

finding that militates against release, and is weighed along with the other factors identified in 18 U.S.C. § 3142(g). *United States v. Hir,* 517 F.3d at 1086. The four factors are: 1. Nature and seriousness of the charges; 2. Weight of the evidence against the defendant; 3. History and characteristics of the defendant; and 4. "Nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4). The Bail Reform Act recognizes that release should be the normal course, and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). In evaluating whether the defendant poses a serious potential for dangerousness, it is not necessary for the Government to produce, or for the Court to rely on, evidence of prior convictions for violent crimes. *United States v. Hir,* 517 F.3d at 1091-92; *United States v. Rodriguez,* 950 F.2d 85, 88-89 (2d Cir. 1991).

In this case—applying the first factor—charges against the defendant are extremely serious. The Complaint (Dkt. 2, redacted) alleges Murder in the Second Degree; that the defendant and a co-defendant, Bobbie Pease (charged as having unlawfully killed the victim with malice aforethought, and by aiding and abetting) killed the 34-year-old victim by striking her with a bat and shooting her with a handgun, after taking her to a wooded area on the federally-owned property of Joint Base Lewis-McChord. The Indictment alleges Murder in the Second Degree in Count One, (Dkt. 25 at 1-2) and Possession of a Firearm in Furtherance of a Crime of Violence in Count Two (Dkt. 25 at 2). The Government brought these two charges under the applicable statutes against both the defendant and Pease; both men are alleged to have acted as principals (either by directly committing the acts, or by aiding and abetting). Count Three of the Indictment is charged only against the co-defendant Pease, for Felon in Possession of a Firearm (Dkt. 25 at 2-3).

The autopsy report indicated the victim suffered three gunshot wounds to the head and multiple skull fractures; she died from three gunshots to the head, and it is likely that blunt force injuries to the head were a significant contributing factor to her death. Dkt. 2 at 4-6. The alleged murder occurred on September 4, 2018; the victim's body was not recovered until September 13, 2018. The defendant gave more than one statement, and indicated that he was with the co-defendant, Mr. Pease, on September 4, 2018 when the alleged murder happened. Dkt. 2 at 8-10. Mr. Pease, the co-defendant, also made statements that he was with Mr. Warren when the alleged murder happened. Dkt. 2 at 11-12. Their statements differed as to the specific role that each defendant played in the attack on the victim, and other specific facts.

According to the Complaint, Warren initially gave information to law enforcement that he was present but not involved in the harm to the victim; later he admitted to having handed pepper spray to Mr. Pease, that he saw Pease spray the victim with pepper spray, take a baseball bat and beat the victim with it, and that Pease pulled out a handgun and shot the victim three times – in addition, Warren admitted that as they drove the victim to the site of the killing he knew Pease had a handgun holstered on his hip and feared that Pease was going to harm the victim, that Warren kicked the victim after she had been shot, and also admitted to helping Pease move the victim's body after she had been shot. Warren showed law enforcement officers the location where a .22 caliber handgun and unspent ammunition had been left behind by Pease. Dkt. 2. Pease told police that Warren was in the car with him and the victim on the way to the place where the murder occurred, and that Warren beat the victim with a baseball bat. Dkt. 2 at 11.

Regarding the second factor, the weight of the evidence, this factor is difficult to assess at this stage, and the Court does not rely heavily on this factor. The Court takes into account that the defendant made inculpatory statements to law enforcement.

Regarding the third factor, history and circumstances of the defendant, the defense has proffered evidence that he has a cognitive impairment and this has caused hardship for him during his life. Mr. Warren participated in the Special Olympics, and the Court considered that this was a positive contribution to the community. Dkt. 38 at 1. He has significant relationship ties to the community—some of his family members are supportive. Dkt. 38 at 1.

The defendant proposed to live in his mother's Lakewood, Washington residence where he can stay with his family. He has two small children, and their mother along with their children would also be living in the home where the defendant proposed to reside. Two individuals, Mr. Warren's mother and her long-term boyfriend, offered to serve as third-party custodians for the defendant. In the alternative, the defendant proposed that he would reside in a Residential Re-entry Center (R.R.C.) in Tacoma; there, he would be supervised by United States Pretrial and Probation, and allowed to come and go from a supervised living facility where others who are charged with or convicted of crimes also reside during their court-ordered release and terms of supervision.

The pretrial services supplemental report (Dkt. 47) illuminates additional circumstances of the defendant. At the time of his arrest defendant had been working in construction for about one week in Forks, Washington. He was living in Forks (beginning October 5, 2018) at the time of the arrest; he lived in Tacoma with co-defendant Bobbie Pease in Tacoma on October 4, 2018; the defendant had been homeless for about a month before that; and he previously had lived in Tacoma (2016-2018), in a house he rented with his second wife. Dkt. 47 at 2.

The supplemental pretrial services investigation also indicates that the mother of the two children (ages three and four) she shares with the defendant, reported that about two years ago, the defendant used a knife and attempted to stab her boyfriend. The mother of the children stated

that several children were present at that time, and the defendant nearly stabbed a child. The mother of the children stated that that the defendant's mother would not allow the children's mother to call the police about that attempted stabbing. The woman with whom the defendant has two young children also stated that in 2017 the defendant kidnapped the children and did not return them for two weeks; she sought a restraining order, but defendant's mother directed her to drop that restraining order. Dkt. 47 at 5.

The supplemental pretrial report also describes recent incidents at the Federal Detention Center during which the defendant fabricated information. Dkt. 47 at 5. The Government has also submitted documents relating to the defendant fabricating information to "frame" another inmate at the Federal Detention Center, as well as at least one apparently accurate report by the defendant regarding an assault that was perpetrated by another inmate on the defendant. Dkt. 41, Exhibits 1, 2 (at 12-15), and 3 (at 17); Dkt. 42 at 12.

The defendant does not have adult criminal history; according to the supplemental presentence report, his juvenile history includes nine convictions between 9-12-2000 and 9-6-2004. This criminal history is remote in time, yet the Court has considered that it shows the defendant had difficulty controlling his behavior and repeatedly violated criminal law. Even if the Court completely excluded from consideration this evidence of juvenile criminal history, the Court would still find that the other evidence of the defendant's serious potential for dangerousness is clear and convincing.

The fourth factor, dangerousness to others and to the community, is present in this situation. The Government has proffered evidence that the defendant has given changing accounts of the alleged crime, and false or misleading information; the defendant's lack of trustworthiness in giving information would make it difficult for any pretrial and probation professional, or any R.R.C. supervisor, to be able to successfully monitor the defendant if he

were released pending trial. Likewise, the allegations of the woman with whom he shares two young children, that the defendant kidnapped the children and she sought a restraining order, but defendant's mother directed her to drop that restraining order, also shows that the defendant did not control his own behavior and his mother enabled such acts to go unreported. The defendant's conduct of attempting to stab another person also shows that he lacked control over his behavior.

The fact that the defendant relocated to Forks very quickly after the alleged murder took place shows—by a preponderance of the evidence—that despite his cognitive impairment he has the ability to flee and re-establish his life in another place.

When there is clear and convincing evidence that the defendant poses a danger to others and to the community, or there is a preponderance of the evidence showing that the defendant is a flight risk or may fail to appear for court hearings, the Court must next analyze whether there is a "condition or combination of conditions [that] will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e); *United States v. Hir,* 517 F.3d at 1092-93. As discussed above, the defendant's false or misleading statements to law enforcement, and also to correctional officers at the FDC, show that he would be a non-trustworthy reporter of his intentions and his behavior. Any probation officer would have extreme difficulty supervising the defendant, even if location monitoring equipment were deployed. The defendant's reports of his plans and activities could not be trusted, given his track record of false or misleading statements.

In addition, the mother of the defendant's two young children has reported to Probation Officer Bassett that, about two years ago, the defendant wielded a knife toward a person in the presence of children, and also the defendant has (in 2017) taken their two children away from her for two weeks. She also indicated that the defendant's mother intervened to prevent the mother of these two children from reporting the knife-wielding incident, and pressured her to withdraw a restraining order concerning the taking of the two children. These incidents reflect the defendant

has a serious problem with maintaining compliance with the law, impulsive behavior, and avoidance of legal consequences with the help of a family member. There are no conditions, or combination of conditions, that would allow the Court to mitigate the risk of dangerousness, or risk of flight or failure to appear, regarding the defendant.

Considering all of these factors, the Court finds that the statutory presumption of detention was not overcome.

The defendant shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded reasonable opportunity for private consultation with counsel. The defendant shall be delivered on order of a Court of the United States or on request of an attorney for the Government, be delivered to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

The clerks shall direct copies of this order to counsel for the United States, to counsel for the defendant, the United States Marshal and to the United States Probation Office and/or Pretrial Services Office.

Dated this 6th day of March, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge